JUSTICE WEBER
dissents as follows:
The opinion states the primary issue in this case as follows:
The primary issue in this case, simply stated, is whether an employee, presented with a choice between being fired or accepting an early retirement package, has been “discharged” for purposes of bringing an action under Montana’s Wrongful Termination Act.
In its summary judgment, the District Court speaking to that same issue stated:
Choosing to accept the available retirement option was the same as entering into an employment contract or settling a lawsuit, which is another form of agreement. Jarvenpaa agreed that he would retire and accept the benefits and detriments of doing so. Thus, while he may have been discharged, such discharge could not be unlawful.
Prior to discussing the merits of the holding of the opinion in this case as compared to the District Court, I believe it is essential to more fully set forth the basis on the part of the District Court for its decision on summary judgment. Following are pertinent portions of that Order:
The undisputed facts of this case are as follows: Sometime prior to October 23, 1992, plaintiff Donald Jarvenpaa’s supervisor told him he, Jarvenpaa, would be terminated on December 31, 1992. In the alternative, Glacier offered Jarvenpaa the opportunity to take early retirement which would provide Jarvenpaa with over $100,000 in retirement benefits (beyond what he would receive if discharged) and would allow him to continue to participate in Glacier’s health care plan. Jarvenpaa chose to retire and took a retirement package of over $300,000, plus continued coverage under Glacier’s health care plan. This retirement package was available to other qualified employees of Glacier.
*485 Jarvenpaa clams that his choice to retire was a “Hobson’s choice,” no choice at all, and that he was coerced into resigning.
Glacier claims that Jarvenpaa’s choice to accept early retirement precludes any possibility of a finding that Jarvenpaa was discharged.
The definition of the term “discharge” includes resignation. § 39-2-903(2), Mont. Code Ann. (1991). It does not specifically include retirement. However, as retirement is a form of termination of employment it appears to be included in the statutory definition of discharge.
On January 14, 1993, Jarvenpaa signed an EMPLOYEE’S ELECTION TO ACCEPT SPECIAL EARLY RETIREMENT WINDOW which states that Jarvenpaa’s choice to accept the early retirement was “voluntary and ... made of [Jarvenpaa’s] own free will.”

Jarvenpaa accepted the benefits of early retirement. Glacier paid Jarvenpaa over $100,000 for his election to retire. Also, Jarvenpaa was allowed to continue to participate in Glacier’s employee health care plan (with premiums paid by Jarvenpaa.)

Jarvenpaa’s signed acknowledgement that his retirement was voluntary and his acceptance of the benefits provided under the early retirement agreement precludes Jarvenpaa as a matter of law from recovery under Title 39, Chapter 2, part 9, Mont. Code Ann. (Emphasis supplied.)
While not specifically quoted by the District Court in its Order, it is undisputed that the plaintiff and his wife signed the Employee’s Election to Accept Special Early Retirement Window which is attached to plaintiff’s deposition as Exhibit H and which in pertinent part states:
The undersigned employee of Glacier Electric Cooperative, Inc. (the “Cooperative”), and his/her spouse, acknowledge that they have been presented with a copy of the Board Resolution that makes available a Special Early Retirement Window (the “Retirement Window”) for certain employees of the Cooperative, and that they have had a full explanation of the Retirement Window, and opportunity to ask all questions concerning it that they wish to ask.
The undersigned employee and his/her spouse acknowledge that during the window period of 3 months, they have had ample time to examine the provisions of the Retirement Window and consult with anyone they wish. The undersigned parties under *486 stand that the employee’s election under the Retirement Window is voluntary and state that this election is made of the employee’s own free will.
The undersigned employee hereby elects to participate in the Retirement Window. ...
The undersigned spouse of the undersigned employee states that he/she agrees with the election of the employee under the Retirement Window.
I conclude that the following undisputed facts which are contained in plaintiff’s deposition are also relevant on this issue:
(Questioning by defense counsel)
Q: ... Now, as I understand it, and we know from the record that you elected the Special Early Retirement Program, my understanding is you took the lump sum option under that program and received money in a lump sum; is that correct?
A: That’s correct.
Q: And if I understand the payments that you received, you basically got $302,000 as a lump sum under the special program, you got 15,700 and some dollars for contributions that you had made into the program, and you also received 25,000 and almost $900 for accrued vacation and leave and so forth. Is that accurate?
A: Sounds close.
Q: Can you think of any checks I missed out on?
A: Not offhand, no.
Q: Okay.
A: You got, what did you say, 302?
Q: I got 302.
A: Plus 15?
Q: Plus 15, plus 25.
A: Okay. Pretty close, I guess.
An important fact to keep in mind is that, as a part of this Early Retirement, the plaintiff received something over $340,000 in cash, and after receipt of that, he then commenced the present lawsuit.
It is also important to keep in mind one of the facts which was considered and referred to by the District Court. The special retirement accepted by the plaintiff required the expenditure of over $100,000 additional funds by defendant. Again, this is demonstrated in plaintiff’s deposition where he stated as follows:
*487 Q: All right, now, what I want to ask you is, do you know how much it cost the co-op to buy you that special retirement program that you have taken the money from?
A: I have no idea.
Q: Okay. Well, I think that there’s some correspondence in here, maybe the November 2 letter, I’m not sure, but are you aware the co-op paid about $106,000 to get you eligible for that Special Early Retirement Program? Does that number mean anything to you? A: No.
Q: Hundred thousand sound like a ball park figure?
A: Well, are you saying if I was terminated — I know if I was terminated, I’d get 200 according to that letter there, and if I didn’t, I would get 300.
Q: So you got really $100,000 more as part of your lump sum because you took the special retirement; right?
A: Right.
Q: All right. Now, what I don’t understand is why are you saying you were actually discharged when you elected the special—
A: I only had one option or the other.
Q: I understand that.
A: Okay.
Q: Now, if you lose this lawsuit, are you prepared to pay back to the co-op the hundred and some thousand dollars that they have paid to give you the special retirement program that you took?
A: Do you think I should?
Q: I’m asking you.
A: No, I wouldn’t.
Q: Why not?
A: Well, why would I?
Q: Why not?
A: I don’t feel that I should.
We emphasize that the extra $100,000 is clearly consideration for early retirement paid by the defendant Glacier Electric to the plaintiff.
In its Order the District Court pointed out that plaintiff was not compelled to retire in the form that he did and was free to remain employed until discharged when he would receive substantial benefits, although less than he received by retiring, and seek compensation for the discharge in a lawsuit. The District Court stated:
*488 Jarvenpaa was free to remain employed until discharged and then seek compensation for the discharge if he believed it to be without good cause. He would have received all he was entitled to and if he was successful in his lawsuit he would have received damages. Instead, Jarvenpaa chose to accept early retirement and the benefits appurtenant thereto. He did have a choice. The retirement was available to him, and others, and it did not entail the risk that he would be unsuccessful in a lawsuit alleging an unlawful discharge.
This properly emphasizes the distinction between this case and several of the cases cited in the opinion here. This was not a case in which a plaintiff was required to resign or he would receive no benefits.
By accepting early retirement, the plaintiff required that the defendant spend over $100,000 of additional funds to purchase the retirement benefits which he has now received. The analysis of the District Court on this aspect was directly on point when the District Court stated:
Choosing to accept the available retirement option was the same as entering into an employment contract or settling a lawsuit, which is another form of agreement. Jarvenpaa agreed that he would retire and accept the benefits and detriments of doing so. Thus, while he may have been discharged, such discharge could not be unlawful.
This is a key aspect of this case. This is directly comparable to the settling of a lawsuit by agreement which includes the payment of substantial monies to the settling plaintiff.
The opinion points out that in most cases the situation presented is one where the employment was actually terminated by the employer, which of course does not apply here. The opinion then points out that the Wrongful Discharge Act covers those situations where the employer has made working conditions so intolerable that the employee is forced to quit — a constructive discharge. I disagree with the analysis because I find no basis to conclude there was something which could be called a constructive discharge. I agree with the analysis of the District Court which stated:
Glacier’s notice that if he chose not to retire, Jarvenpaa would be terminated for what Glacier considered good cause but Jarvenpaa did not, does not constitute a constructive discharge.
“ ‘Constructive discharge’ means the voluntary termination of employment by a employee.because of a *489 situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative.” § 39-2-903(1), Mont. Code Ann. (1991).
The choice between discharge and retirement cannot be said to be “so intolerable that voluntary termination [or retirement] is the only reasonable alternative.”
The Court concludes that Jarvenpaa voluntarily retired. Accordingly, his claim for wrongful discharge must fail.
Certainly the constructive discharge statute does not apply to this type of a situation as there is an absence of a situation which was so intolerable that voluntary termination was the only reasonable alterative. That analysis is just not applicable here.
I agree with the holding of the District Court that plaintiff Jarvenpaa voluntarily retired and therefore his claim for wrongful discharge fails.
I have emphasized the facts in this case because such facts do not warrant the technical legal application or analysis which is applied in the opinion. The uncontradicted facts as established primarily through the deposition testimony of plaintiff Jarvenpaa, establish that there were numerous and clear grounds, as viewed by the employer, to discharge Jarvenpaa. Those conditions were viewed by the employer as being so intolerable as to require his discharge. In its analysis, the employer took into consideration the approximate 30 years of employment by plaintiff Jarvenpaa and concluded it was fair to allow him to retire under the Special Early Retirement package, even though that required an additional expenditure of over $ 100,000 on the part of the employer. At a time when plaintiff was represented by counsel, he executed his Employee’s Election to Accept in which he specifically stated as follows:
The undersigned parties understand that the employee’s election under the Retirement Window is voluntary and state that this election is made of the employee’s own free will.
This is not a case in which the employee was forced to sign this without benefit of counsel. All of the exhibits to which reference has been made were furnished by the defendant Glacier Electric to plaintiff’s counsel and were considered by that counsel who in turn prepared various of the papers submitted by the plaintiff employee. I agree with the analysis of the District Court which concluded that Jarvenpaa agreed (with the advice of his own counsel) that he would *490 retire and accept the benefits and detriments of doing so. Under that circumstance it is unjust to allow the present action to continue.
I would point out that the opinion must be construed by the employer as setting a precedent which tells the employer that it made a mistake when it put up an additional $100,000 plus in order to buy a retirement program and its peace — it should just have said we have an adequate basis to discharge and then do so — making such a discharge we will not consider the number of years of employment or any positive factors in the employee’s favor. The opinion has the effect of inviting extended litigation in connection with the various early retirement plans which have been recently used throughout Montana, and even by the State government itself.
CHIEF JUSTICE TURNAGE and DISTRICT JUDGE TED L. MIZNER (sitting for Justice Leaphart) concur in the foregoing dissent.